UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JASPER & BLACK, LLC,

        Plaintiff,

    -v-                           No.  10 Civ. 3562 (LTS)(HBP)

CAROLINA PAD COMPANY, LLC,
LIBRETTO HOLDINGS, LLC, WILLIAM
NIX, and THOMAS CUSHING,

        Defendants.

------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Jasper & Black ("Plaintiff" or "J&B") brings suit against Defendants

Carolina Pad Company LLC ("Carolina Pad" or "CP"), William Nix ("Nix"), Libretto Holdings,

LLC ("Libretto"), and Thomas Cushing ("Cushing") (collectively, "Defendants"), asserting

claims for breach of contract, tortious interference, unjust enrichment, fraud and conspiracy.

Plaintiff asserts that Defendants unlawfully terminated a contract pursuant to which Plaintiff was

to be Libretto's exclusive distributor for certain lines of stationery and gift products.  This Court

has jurisdiction of the action pursuant to 28 U.S.C. §§ 1332.  Before the Court are Defendants'

motions to dismiss Plaintiff's Amended Complaint (the "Complaint" or "Compl.") pursuant to

Rule 12(b) of the Federal Rules of Civil Procedure.  The Court has reviewed carefully all of the

parties' submissions and, for the following reasons, Defendants' motions are granted in part and

denied in part.

### I.    BACKGROUND

        Unless otherwise noted, the following facts are taken from Plaintiff's Complaint

and accepted as true for purposes of this motion practice.  Certain elements of this background summary are also drawn from documents integral to the Complaint that have been proffered in connection with the current motion practice.[1]  Defendant Libretto manufactured stationery and other products under various licenses from third parties.  (Compl. ¶¶ 2, 20.)  Thomas Cushing was the principal operating officer of Libretto.  (Compl. ¶ 10.)  William Nix is the Vice-President of Domestic Business Development for Carolina Pad.  (Compl. ¶ 12.)  Jeremy Black ("Black") is J&B's principal officer.  (Compl. ¶ 24.)

On October 26, 2007, J&B and Libretto entered into a Master Distribution Agreement (the "J&B/Libretto Agreement").  (Compl. ¶ 1.)  The J&B/Libretto Agreement provided that J&B would be Libretto's exclusive United States distributor for Orla Kiely stationery products.  (Compl. ¶ 2; see also Compl., Exh. A, § IV (hereinafter "J&B/Libretto Agreement").)  The Agreement also provided that "additional products licensed with [Libretto] may be granted to [J&B] for distribution upon written agreement by the Parties," and that any such additional products would be "attached to th[e] agreement in the form of an amendment." (J&B/Libretto Agreement, § IV.)  For purposes of this motion practice, the Orla Kiely line and any additional products are collectively referred to as the "Products."

Under the terms of the J&B/Libretto Agreement, J&B was responsible for marketing, selling, and delivering the Products to customers.  (Compl. ¶ 19.)  In particular, J&B was to promote the Products through trade shows, evaluate the Products, prepare marketing information for the Products, process orders, ship the Products, pay sales commissions due to sales representatives, and provide sales and inventory reports to Libretto.  (Id.)  Libretto was to

---

[1]   See Section II(A), infra, for an explanation of what documents, beyond the Complaint, the Court may consider when determining a Rule 12(b)(6) motion to dismiss.

supply J&B with product samples, catalogues, and merchandising displays, and was also to manufacture, produce and deliver the Products in accordance with orders obtained by J&B. (Compl. ¶ 20.)  The initial term of the Agreement was one year, with a provision for automatic two-year renewals thereafter, so long as J&B achieved certain sales volumes.  (Compl. ¶ 18; J&B/Libretto Agreement, § VII.)

        J&B began marketing the Libretto Products in January 2008.  (Compl. ¶ 23.) However, Libretto failed to provide J&B with product samples, catalogs, merchandising graphics, and sufficient quantities of products and inventory.  (Id.)  Consequently, "the launch of the Libretto Products was not as successful as it should have been, resulting in lost sales and revenues."  (Id.)

        In October 2008, Libretto and J&B agreed to jointly market their companies for sale, and developed a "Confidential Investment Memorandum" that characterized J&B as Libretto's marketing and distribution arm.  (Compl. ¶ 28.).  William Nix contacted J&B in December 2008, and indicated that Carolina Pad was interested in an acquisition.  (Compl. ¶ 29.) Black and Nix met twice - on January 8, 2009, and January 15, 2009 -  to discuss Carolina Pad's proposed acquisition of J&B and Libretto.  (Compl. ¶ 30.)  Despite these initial discussions, Carolina Pad ultimately declined to purchase both Libretto and J&B jointly, and did not meet with Black after January 2009.  (See Compl. ¶¶ 29-32.)

        Prior to May 2009, J&B facilitated Libretto's acquisition of a licensing arrangement with another product line, and Libretto agreed that J&B would handle the marketing and distribution of that line under the existing agreement.  (Compl. ¶¶ 21-22.)  J&B also introduced other new Libretto lines to its sales force.  (Compl. ¶¶ 33-34.)  On May 15, 2009, Carolina Pad acquired Libretto's business, including Libretto's licenses for various product lines.

(Compl. ¶ 35.) Nix was responsible for implementing Carolina Pad's purchase of Libretto's assets. (Compl. ¶ 12.) Plaintiff alleges that, by "acquiring Libretto," CP "assumed all of Libretto's liabilities necessary for the uninterrupted continuation of Libretto's business." (Compl. ¶ 38.) The Agreement for Purchase and Sale of Assets between Libretto and CPP International, LLC[2] ("CP/Libretto Asset Purchase Agreement"), provided only for the purchase of specific Libretto assets listed in an attached schedule of "Purchased Assets" and the assumption of specific contracts listed in an attached schedule of "Assumed Liabilities." (Affirmation of Laura Anne Reeds in Support of Motion to Dismiss the Amended Complaint (hereinafter "Reeds Aff."), Exh. A, Art. I.) The J&B/Libretto Agreement was not listed on either the "Purchased Assets" or the "Assumed Liabilities" schedule. (See id.) After the acquisition, Carolina Pad operated Libretto's business as its gift division, referring to the division as Libretto Group. (Compl. ¶ 37.) Cushing continued to act as Libretto Group's chief operating officer, with the title of "Vice President - Libretto Group." (Compl. ¶ 37.)

On May 18, 19, and 20, 2009, J&B met with its sales representatives at Libretto's New York showroom. (Compl. ¶ 41.) J&B introduced its key sales representatives and customer accounts to Cushing, and presented him with opportunities for sales growth through Carolina Pad. (Id.) On June 4, 2009, J&B met with another Carolina Pad representative to discuss future possibilities for selling and distributing the Libretto Product lines. (Compl. ¶ 42.) Throughout June, J&B worked on the design and production of a catalog for Libretto Products. (Compl. ¶ 43.) However, Carolina Pad and Libretto Group's failure to timely provide J&B with product samples and marketing materials prevented J&B from participating in some major trade shows.

---

[2]     Defendants assert that the CPP entity is the same as CP. There appears to be no dispute that the purchase and sale agreement with CPP is the relevant agreement.

(Id.)  In August 2009, Cushing confirmed that Carolina Pad would reimburse J&B for costs incurred while promoting the Products at the New York International Gift Fair (NYIGF). (Compl. ¶ 45.)  From August 16 to August 20, 2009, J&B showed, promoted, and took sales orders for the Product lines at the NYIGF.  (Compl. ¶ 46.)  Nix observed J&B's presentation at the NYIGF and, on August 31, 2009, emailed Black to congratulate him on the Products' success.  (Compl. ¶ 47.)  This August 31 email also referenced a revised proposal for an agreement between J&B and Carolina Pad.  (See Reeds Aff., Exh. D.)

On September 1, 2009, Nix notified J&B that, given the existing structure and long-term plans of Carolina Pad, it was not logical for Carolina Pad to maintain "the present sales/distribution model in place now for Libretto."  (Reeds Aff., Exh. E.)  While Nix acknowledged that J&B had "invested a lot of time and money to build the Libretto business as well as provide a foundation for the success of the business," he also stated that Carolina Pad would "have to change [its] approach to managing the reps and servicing the customers into one that matches the Carolina Pad plan for the future."  (Id.; see also Compl. ¶ 48.)  Nix suggested that J&B facilitate the transfer of all aspects of marketing for the Product lines to Carolina Pad and then, after one year, the involvement between the two companies would conclude.  (Compl. ¶ 49; see also Reeds Aff., Exh. E.)  On September 17, 2009, Nix contacted J&B's sales representatives and announced that, "beginning Jan 1st 2010[,] Carolina Pad will manage all aspects of the Libretto company, this includes shipping, customer service, invoicing and working with sales groups.  We will not utilize any services from Jasper and Black after Dec. 31st, 2009." (Compl. ¶ 51.)  Nix also solicited J&B's sales representatives' agreement to deal directly with Carolina Pad and Libretto on sales of Libretto product lines.  (Compl. ¶ 52.)

After two weeks, Nix withdrew Carolina Pad's revised proposal to J&B, writing

"I am taking your non-response as no interest on your part and I am withdrawing my offer for you to participate in the sales efforts of Carolina Pad.  Please discontinue your representation of Carolina Pad." (Reeds Aff., Exh. F; see also Compl. ¶ 53.)  On September 24, 2009, Nix sent another email to J&B confirming that it was "not in Carolina Pad's best interest to continue a business association with Jasper & Black" and giving J&B until December 31, 2009 to return any inventory and wrap-up loose ends related to either Carolina Pad or Libretto.  (Compl. ¶ 54; Reeds Aff., Exh. G.)

Plaintiff asserts the following claims against Defendants: breach of contract as to Carolina Pad (Count I); breach of contract as to Libretto (Count II); tortious interference with contractual relations as to Cushing and Nix (Count III); fraud as to Cushing and Nix (Count IV); and conspiracy as to Libretto, Cushing and Nix (Count V).  If the breach of contract action against Carolina Pad fails because Carolina Pad is found to not be party to the J&B/Libretto Agreement, Plaintiff asserts, in the alternative, its tortious interference, fraud, and conspiracy claims against Carolina Pad, as well as a claim for unjust enrichment (Count VI).

## II.   DISCUSSION

### A.   Standard of Review

When deciding a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  While detailed factual allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Pleadings consisting only of "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S., at 555).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotations and citations omitted).

   In determining a Rule 12(b)(6) motion to dismiss, the Court may consider the complaint, any exhibit attached to the complaint, materials incorporated in the complaint by reference, and documents that, "although not incorporated by reference, are 'integral' to the complaint."  Schwartzbaum v. Emigrant Mortgage Co., No. 09 Civ. 3848, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010).  A document is integral to the complaint if the complaint "relies heavily upon its terms and effect."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted).  If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.  Barnum v. Millbrook Care Ltd. Partnership, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994).

### B. Consideration of Documents as Integral to the Complaint

   1. Documents Attached to the Reeds Affirmation

   In support of their motion to dismiss Plaintiff's Complaint, Defendants Carolina Pad and Nix submit the affirmation of Laura Anne Reeds and eight accompanying attachments. Plaintiff argues that the Court may not consider the affirmation or its attachments in determining the motion to dismiss.

   The Reeds Affirmation consists merely of a brief description of each document

attached, as well as a list of the paragraphs of the Complaint that Defendants contend rely on the attached documents, and is properly considered by the Court in this motion practice.

Plaintiff next claims that the Court may not consider several of the documents attached to the Reeds Affirmation, as they are not integral to the Complaint. The seven documents at issue are as follows:

Exhibit A: The May 15, 2009 CP/Libretto Asset Purchase Agreement. The Complaint relies heavily upon the terms and effect of this document, as several of Plaintiff's theories of liability depend on the premise that, pursuant to the CP/Libretto Asset Purchase Agreement, Carolina Pad also assumed the J&B/Libretto Agreement. The Court may properly consider Exhibit A for purposes of this motion practice.

Exhibit B: A letter, dated July 8, 2009, from Black to Cushing, proposing a new distribution agreement between J&B and Carolina Pad. Carolina Pad claims that this document is referred to in paragraphs 5 and 39 of the Complaint and is integral to the Complaint. After reviewing both the document and the Complaint, however, the Court finds that the July 8, 2009, letter is, at best, implicitly referenced in the Complaint. The Court will not consider Exhibit B in determining the sufficiency of the Amended Complaint.

Exhibit C: A series of emails, dated August 3, 2009 to August 5, 2009, between Black and Cushing, negotiating the terms of a proposed distribution agreement between J&B and Carolina Pad. Carolina Pad claims that this email chain is referred to in paragraphs 5 and 39 of the Complaint and is integral to the Complaint. As with Exhibit B, however, the Court finds that the Complaint does not rely heavily upon this email chain and declines to consider Exhibit C in determining the sufficiency of the Complaint.

Exhibit D: A series of emails, dated August 30, 2009, to August 31, 2009, between Black and Nix, continuing to negotiate the terms of a proposed distribution agreement between J&B and Carolina Pad, and specifically discussing J&B's promotion of Libretto Products at the New York International Gift Fair ("NYIGF").  Plaintiff paraphrases a portion of this email chain in Paragraph 47 of the Complaint, and relies on the language and effect of that portion of the correspondence in the Complaint.  For example, Plaintiff's claims for both unjust enrichment and fraud rely, in part, on allegations that Carolina Pad's misrepresentations induced Plaintiff to promote the Libretto Products at the NYIGF.  For purposes of determining the sufficiency of the Amended Complaint, the Court will consider the single communication specifically referenced in the Complaint - that is, the email dated August 31, 2009, from Nix to Black.  The Court will not consider other correspondence included in this Exhibit.

Exhibit E: A series of emails, dated September 1, 2009, to September 2, 2009, between Black and Nix, in which Carolina Pad indicated that the distribution agreement J&B had with Libretto would not work for Carolina Pad, and provided a revised proposal.  Plaintiff quotes from and paraphrases a portion of this email chain in Paragraphs 48-50 of the Complaint, and otherwise relies on the language and effect of that portion of the correspondence in the Complaint.  For example, Plaintiff's breach of contract claims against both Carolina Pad and Libretto rely on the language of this correspondence to demonstrate a breach.  For purposes of determining the sufficiency of the Amended Complaint, the Court will consider the communications specifically referenced in the Complaint - that is, the email dated September 1, 2009, from Nix to Black, and the proposal attached to that email.  The Court will not consider other correspondence

included in this Exhibit.

Exhibit F: A single email, dated September 19, 2009, from Nix to Black, asserting that

Black had not responded to CP's revised proposal from September 1, 2009, and

withdrawing CP's offer to enter into a distribution relationship with J&B.  Plaintiff

quotes from this email in Paragraph 53 of the Complaint and otherwise relies on the

language and effect of this email in the Complaint.  The Court will consider Exhibit E in

this motion practice.

Exhibit G: A series of emails, dated September 24, 2009, to October 13, 2009, between

Black and Nix, confirming that negotiations for a distribution agreement between J&B

and CP had broken down.  Plaintiff quotes from and paraphrases a portion of this email

chain in Paragraphs 6, 54, 55, and 57 of the Complaint and otherwise relies on the

language and effect of that portion of the correspondence in the Complaint.  For purposes

of determining the sufficiency of the Amended Complaint, the Court will consider the

single communication specifically referenced in the Complaint - that is, the email dated

September 24, 2009, from Nix to Black.  The Court will not consider other

correspondence included in this Exhibit.


2.      Documents Attached to the Avedisian Declaration

        Defendants Libretto and Cushing support their arguments that the Amended

Complaint should be dismissed with several references to the Joint Preliminary Pretrial

Statement and exhibits attached thereto, that the parties filed with the Court on July 30, 2010.[3]

---

[3]     The exhibits that Defendants reference were originally attached as Exhibits B and C to
the Declaration of Paul S. Betrand, Jul. 23, 2010, ECF No. 25.  In Defendants' current
submission, the documents are attachments B and C to the Declaration of Craig

Defendants argue that, although these materials are extraneous to the Amended Complaint, the Court may still consider them as stipulated facts in the Court's file. Defendants' arguments to the contrary, the law is clear that, in deciding a motion to dismiss, a court may take judicial notice of filings only to establish the fact of their filing, not for the truth of their contents. See, e.g., Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (analysis of extraneous documents inappropriate when documents were used not merely to establish their existence, but to provide a basis for the court's conclusions); Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (extraneous documents permitted only when "relevant not to prove the truth of their contents but . . . to determine what the documents stated"). The Court will not, for purposes of this motion to dismiss, consider the Joint Preliminary Pretrial Statement or Exhibits B and C to the Avedisian Declaration.


D.     Breach of Contract Claim Against Carolina Pad (Count I)

       To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." Clalit Health Services v. Israel Humanitarian Foundation, 385 F. Supp. 2d 392, 397 (S.D.N.Y. 2005) (internal quotations omitted). Here, Plaintiff has not alleged facts sufficient to state plausibly a claim for breach of contract between Carolina Pad and J&B.

       Plaintiff proffers three theories as to the existence of a contract: 1) Carolina Pad acquired the J&B/Libretto Agreement under the terms of the CP/Libretto Asset Purchase

---

Avedisian, Apr. 11, 2011, ECF No. 50.

Agreement; 2) Carolina Pad implicitly agreed to become party to the J&B/Libretto Agreement

by encouraging and accepting J&B's performance under that Agreement; and 3) Carolina Pad is

bound by the terms of the J&B/Libretto agreement because Carolina Pad's purchase of Libretto

constituted a de facto merger.

      Plaintiff's claim that Carolina Pad assumed the J&B/Libretto Agreement pursuant

to the CP/Libretto Asset Purchase Agreement is facially inconsistent with that Agreement.

Article 1.1 of the CP/Libretto Asset Purchase Agreement provides that:

> On the date hereof and excluding the Excluded Assets (defined below), Seller
> [Libretto] hereby sells to Buyer [Carolina Pad] and Buyer hereby purchases from
> Seller the real, personal, tangible and intangible properties set forth on <u>Schedule
> 1.1</u> (the 'Purchased Assets'), used by Seller in connection with the operation of its
> production, design, brokering and distribution of licensed designer products
> business in the stationery, fashion accessory and home office categories (the
> "Business"). The Purchased Assets shall not include the following excluded
> assets (the 'Excluded Assets'): (i) cash; (ii) the books and records of Seller ...
> [etc.].

(Reeds Aff., Exh. 1, Art. 1.1.)

      Similarly, Article 1.6 of the CP/Libretto Asset Purchase Agreement provides that

Carolina Pad assumed only the liabilities and obligations of Libretto that were listed in Schedule

1.6 ("Assumed Liabilities and Contracts"). (<u>Id.</u>, Art. 1.6.) While Schedules 1.1 and 1.6 list

several contracts between Libretto and third parties, neither schedule lists the J&B/Libretto

Agreement. (<u>See id.</u>, Arts. 1.1, 1.6.) Plaintiff's argument that, because the J&B/Libretto

Agreement is not specifically listed as an "Excluded Asset," Carolina Pad automatically

purchased the Agreement, is meritless. The CP/Libretto Asset Purchase Agreement expressly

provides that Carolina Pad agreed only to buy the Purchased Assets listed in Schedule 1.1 (of

which the "Excluded Assets" are an excluded subset) and assume the liabilities listed in

Schedule 1.6.

Plaintiff's next argument is that, because Carolina Pad encouraged and accepted J&B's performance under the J&B/Libretto Agreement for several months after May 15, 2009, Carolina Pad "implicitly agreed" to become a party to the J&B/Libretto Agreement.  An implied contract "may result as an inference from the facts and circumstances of the case . . . and is derived from the 'presumed' intention of the parties as indicated by their conduct."  Leibowitz v. Cornell University, 584 F.3d 487, 506-07 (2d Cir. 2009) (internal quotations omitted).  A party's assent to be bound by an implicit contract may be inferred from part performance "only if [the party's] actions can be characterized as 'unequivocally referable' to the agreement alleged."  Anostario v. Vicinanzo, 59 N.Y.2d 662, 664 (N.Y. 1983).

Plaintiff alleges that, after May 15, 2009, it continued to perform its part under the J&B/Libretto Agreement by, among other things, organizing meetings to introduce sales representatives and customers to Cushing; working on the design and production of its autumn/winter catalog; selling and promoting Libretto products at the New York International Gift Fair; and "key account follow-up, providing photographs to media outlets for publication, and providing Product samples to sales representatives."  (Compl. ¶¶ 41, 43, 46, 60.)  The described actions, however, are not "unequivocally referable" to an alleged contract between Carolina Pad and J&B.  After Carolina Pad's purchase of Libretto's assets, it would have been in J&B's business interests to seek to continue a relationship with Carolina Pad on some terms.  Consequently, it is implausible that the only logical reason J&B continued marketing the Libretto Products after May 2009 was because Carolina Pad had agreed to continue precisely the same agreement with J&B that J&B had previously had with Libretto.  See Anostario, 59 N.Y.2d at 664 (plaintiff's part performance insufficient to enforce an alleged oral agreement, when acts were not "explainable *only* with reference to the oral agreement" but rather, could be explained

"as preparatory steps taken with a view toward consummation of an agreement in the future")
(emphasis added).  Plaintiff's Complaint is thus insufficient to state plausibly a breach of
contract claim premised upon Carolina Pad's implicit acceptance of the J&B/Libretto
Agreement.

Plaintiff's final argument is that Carolina Pad is bound by the terms of the
J&B/Libretto Agreement under a theory of successor liability.  Under New York law, "a
corporation that purchases the assets of another corporation is generally not liable for the seller's
liabilities." New York v. National Service Industries, Inc., 460 F.3d 201, 209 (2d Cir. 2006).
An exception to this rule is if there was a consolidation or merger of seller and purchaser. Id.
Plaintiff claims that Carolina Pad's purchase of assets from Libretto constituted such a de facto
merger.  A de facto merger requires: "1) a continuity of the selling corporation, evidenced by the
same management, personnel, assets and physical location; 2) a continuity of stockholders,
accomplished by paying for the acquired corporation with shares of stock; 3) a dissolution of the
selling corporation[;] and 4) the assumption of liabilities by the purchaser." Cargo Partner AG v.
Albatrans, Inc., 352 F.3d 41, 45-46 (2d Cir. 2003) (internal quotations omitted).  Plaintiff fails to
allege facts sufficient to establish element two - continuity of ownership - with respect to
Carolina Pad and Libretto.  In particular, Plaintiff fails to allege that Carolina Pad purchased
Libretto with shares of stock and, in fact, the CP/Libretto Asset Purchase Agreement explicitly
states that Carolina Pad purchased Libretto's assets with cash.  (CP/Libretto Asset Purchase
Agreement, Art. 1.2.)  Thus, Plaintiff has failed to proffer facts sufficient to state plausibly that
Carolina Pad's purchase of assets from Libretto constituted a de facto merger. See, e.g.,
National Service Industries, 460 F.3d at 211 (finding no de facto merger absent continuity of
ownership because "continuity of ownership is the essence of a merger and is what helps [courts]

distinguish a merger from an asset sale") (internal quotations omitted).

For the foregoing reasons, Plaintiff has failed to allege facts sufficient to state a breach of contract claim against Carolina Pad and, therefore, Count I will be dismissed.

E.    Breach of Contract Claim Against Libretto (Count II)

As previously explained, a claim for breach of contract under New York law requires a plaintiff to allege "(1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." Clalit Health Services v. Israel Humanitarian Foundation, 385 F. Supp. 2d 392, 397 (S.D.N.Y. 2005). Plaintiff, in its opposition papers, argues that the J&B/Libretto Agreement was breached when it was wrongfully terminated, and cites to paragraphs 48 - 54 of the Amended Complaint. The allegations in these paragraphs, however, concern only the post-May 2009 actions of Carolina Pad and Nix, and fail to mention either Libretto Holdings or Cushing.[4] The other paragraphs of the Amended Complaint that could be read to allege a breach of contract are Paragraphs 43 and 23. However, Paragraph 43, which alleges a failure to timely supply product samples and marketing materials, refers to only the post-acquisition Libretto Group division of Carolina Pad, rather than to Defendant Libretto Holdings. (Compl. ¶¶ 37, 42.) The only paragraph in the Amended Complaint that specifically alleges a breach of contract by Libretto Holdings is Paragraph 23,

_____

[4]    For example, the relevant paragraphs allege that, "Nix notified Black that the Agreement was 'not convenient to the existing structure of Carolina Pad'"; that "Carolina Pad proposed to Black that the Agreement be terminated at the end of 2009"; that "Nix sent an email to Black that stated, 'Please discontinue your representation of Carolina Pad/Libretto'"; and that Nix advised Black that it was "not in Carolina Pad's best interest to continue a business association with Jasper & Black." (Compl. ¶¶ 48 - 54.)

which alleges that, in January 2008, "[c]ontrary to the terms of the Agreement, Libretto failed to timely provide J&B with Product samples, Product catalogs, merchandising graphics, and sufficient quantities of Product and inventory." (Compl. ¶ 23.)

The Amended Complaint does, however, *implicitly* assert a broader breach of contract claim against Libretto, based on Libretto's sudden termination of the J&B/Libretto Agreement despite the provision that the Agreement could be terminated only "after a breach of [the] agreement by the other Party." (J&B/Libretto Agreement, § VII.)  Libretto argues that J&B may not bring this breach of contract claim because J&B has not alleged its own due performance of the J&B/Libretto Agreement as required by New York law.  See Clalit Health Services, 385 F. Supp. 2d at 397.  While J&B does, throughout the Complaint, allege performance of certain duties under the Agreement, the J&B/Libretto Agreement imposed *thirteen* duties on Plaintiff, and to adequately plead due performance, Plaintiff must allege that it duly performed all thirteen duties.[5]  See Boltizar v. Breitbart, 187 Misc. 685, 687 (N.Y. Sup. Ct. 1946) (notwithstanding a general allegation of due performance, if an attempt is made to plead the actual facts constituting plaintiff's performance, plaintiff must plead "*all* the conditions required to be performed . . . instead of only some of them") (emphasis added).[6]  Because J&B has failed to adequately allege its own due performance of the Agreement, its breach of contract claim as currently asserted against Libretto fails.  However, because the issue of J&B's due performance was raised squarely only in this, as opposed to Defendants' prior, motion to dismiss, J&B is granted leave to replead its breach of contract claim against Libretto.  To the extent that J&B intends to assert its breach of contract claim vis à vis all Libretto product lines

---

[5]      (See J&B/Libretto Agreement, § I (listing all thirteen duties).)

[6]      J&B's Complaint contains no general allegation of due performance.

(that is, Fabrica, Christian Lacroix, Designer's Guild and Wacco Kita[7], in addition to Orla Kiely),

any amended complaint must include all facts that J&B believes are necessary, under Iqbal, to

state a plausible claim for relief.  Similarly, to the extent that J&B intends to seek damages for

lost profits, any amended complaint must include all facts necessary to state a plausible claim.[8]


F.      Claims for Tortious Interference with Contractual Relations (Count III)

               To state a claim for tortious interference under New York law, a plaintiff must

establish: "(a) that a valid contract exists [between plaintiff and a third party]; (b) that

[defendant] had knowledge of the contract; (c) that [defendant] intentionally and improperly

procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."

Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001).  To adequately allege that a defendant

improperly and intentionally interfered with performance of a contract, a plaintiff must identify

the contract(s) in question, allege breach of the contract(s), and identify specific actions by the

defendant that induced the third party's breach.  J&B asserts two theories of tortious interference

---

[7]     While Plaintiff uses the spelling "Wacco Kita," Defendants assert that the correct
spelling is "Wakako Kita."  For purposes of this opinion, the Court will use Plaintiff's
spelling.

[8]     As currently plead, J&B's breach of contract claim is limited to only the Orla Kiely
product line, and to only actual damages, as opposed to lost profits.  The only
breach of contract that J&B adequately alleges in this Complaint is Libretto's
January 2008 failure to provide J&B with product samples and other merchandise.
This alleged breach occurred well before Libretto obtained licenses to sell or J&B
obtained rights to distribute any product line besides Orla Kiely.  Similarly, J&B
alleges that damages for lost profits began in 2009 and ran for every year thereafter.
(Compl. ¶ 83.)  Since the breach of contract alleged in paragraph 23 is limited to
Libretto's actions in January 2008, the lost profits damages alleged in paragraph 83
to begin in 2009 cannot have resulted from that alleged breach.  See Awards.com v.
Kinko's, Inc., 42 A.D.3d 178, 183 (N.Y. App. Div. 2007) ("To recover [lost profits]
damages in a breach of contract claim, a plaintiff must establish that such damages
were actually caused by the breach.")

against Carolina Pad, Nix, and Cushing: 1) that Carolina Pad, Nix, and Cushing tortiously interfered with the contracts between J&B, its customers and its sales and distribution network; and 2) that Carolina Pad, Nix, and Cushing tortiously interfered with the contract between J&B and Libretto.

As to its first theory, J&B asserts that Carolina Pad, Nix and Cushing tortiously interfered with J&B's sales and distribution contracts when Nix notified J&B's sales representatives that Carolina Pad would no longer be utilizing J&B's distribution services.  (See Compl. ¶ 51-52.)  However, the Amended Complaint does not adequately state a claim for tortious interference: J&B has failed to allege the existence of contracts between itself and its customers and sales and distribution network[9]; has failed to present any non-conclusory allegations that any of these third parties breached a contract with Plaintiff, or that CP, Nix, or Cushing induced one of these third parties to breach such a contract; and has failed to allege that CP, Nix, or Cushing used "wrongful means" to induce a third party to breach a contract with J&B.  Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 498-99 (S.D.N.Y. 2002).  Therefore, J&B has failed to state a claim that Carolina Pad, Nix, and Cushing tortiously interfered with contracts between J&B and its customers and sales and distribution network.

Next, J&B asserts that both Nix and Carolina Pad tortiously interfered with the J&B/Libretto Agreement.  To adequately state such a claim, J&B must allege actions by Libretto that constitute a breach of the J&B/Libretto Agreement.  As discussed above, however, the only breach that Plaintiff has adequately pled against Libretto is that, in January 2008, Libretto failed

---

[9]     In its opposition papers, Plaintiff claims for the first time that each order for Libretto products that the Plaintiff took in 2009 constituted a contract between Plaintiff and its customers and its sales representatives.  The Court does not consider these new allegations, as they do not appear in the Amended Complaint.

to timely provide J&B with Product samples, Product catalogs, merchandising graphics, and sufficient quantities of Product and inventory. (Compl. ¶ 23.) J&B does not allege that Nix or Carolina Pad induced this breach and, according to the Complaint, the alleged breach occurred before either J&B or Libretto had any contact with Nix or Carolina Pad. (See Compl. ¶ 29 (noting that December 2008 was the first time that Nix called Black to indicate that Carolina Pad was interested in a possible acquisition).) Therefore, Plaintiff's second claim for tortious interference against Carolina Pad and Nix fails.

       Plaintiff also claims that Cushing tortiously interfered with the J&B/Libretto Agreement. Because Cushing was Libretto's principal operating officer prior to the CP/Libretto Asset Purchase Agreement, Plaintiff's claim that he is liable for inducing a breach of contract between his own corporation and a third-party must meet enhanced pleading requirements. Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp., 296 A.D.2d 103, 109 (N.Y. App. Div. 2002). In particular, plaintiff "must allege that the acts complained of, whether or not beyond the scope of the defendant's corporate authority, were performed with malice and were calculated to impair the plainitff's business for the personal profit of the defendant." Id. at 110. The Complaint does not allege that Cushing acted with malice, that his acts were calculated to impair Plaintiff's business, or that he acted out of a desire for personal profit, as opposed to a desire to help Libretto or Carolina Pad profit. Plaintiff's argument that these elements can be inferred from the allegations of the Complaint is both dubious and insufficient to withstand a 12(b)(6) motion to dismiss. With respect to Cushing's activities post-May 15, 2009 (once Cushing became a Carolina Pad employee), Plaintiff fails to state a claim for substantially the reasons discussed above with respect to Carolina Pad and Nix - Cushing's activities after May 15, 2009, could hardly have induced a breach of contract that allegedly occurred in January

2008.

      To the extent that J&B's claims for tortious interference against Nix, Cushing and Carolina Pad are premised on Libretto's alleged breach of the J&B/Libretto Agreement, J&B may replead its tortious interference claims to reflect any amendments it chooses to make to its breach of contract claim against Libretto.

G.    Unjust Enrichment Claim Against Carolina Pad (Count VI)

      Plaintiff alleges that, by obtaining the benefits of J&B's sales and marketing efforts, including the acquisition of new product lines, the creation of a customer base and sales force, and trade show exposure for the Libretto Group product lines, Carolina Pad has been unjustly enriched. Under New York law, a plaintiff claiming unjust enrichment must allege facts sufficient to establish that 1) the defendant was enriched at the plaintiff's expense; and 2) the defendant's retention of that benefit would be unjust. S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 37 (2d Cir. 1979); New Paradigm Software Corp. v. New Era of Networks, Inc., 107 F. Supp. 2d 325, 328-29 (S.D.N.Y. 2000). Plaintiff's efforts to acquire new product lines, create a customer base and sales force, and trade show exposure were part of its obligations under the J&B/Libretto Agreement, and were to be compensated by the revenues generated by Plaintiff's exclusive right to sell the Libretto products. Plaintiff argues that "CP simply terminated the Plaintiff's exclusive right to sell the Products, depriving the Plaintiff of any compensation, at all, for its years of efforts," and that this wrongful termination allowed CP to "reap for itself the benefits of the Plaintiff's creativity, marketing, and sales efforts." (Plaintiff's Opposition Memo to Carolina Pad at p. 21.) The flaw in this argument is that it depends on the theory that Carolina Pad first became party to, and then terminated, the

J&B/Libretto Agreement.  Plaintiff's unjust enrichment claim is, however, pled in the alternative and necessarily requires that Carolina Pad *not* have become party to the J&B/Libretto Agreement.  If Carolina Pad did not become party to the J&B/Libretto Agreement, Carolina Pad merely purchased certain product lines from Libretto pursuant to the May 15, 2009 Agreement and began selling them thereafter.  Even if Carolina Pad did incidentally benefit from J&B's prior sales and marketing efforts under the J&B/Libretto Agreement, Plaintiff fails to allege facts sufficient to establish that Carolina Pad was enriched at J&B's expense or that Carolina Pad's retention of J&B's marketing and sales efforts is unjust.

  At points in the Complaint, Plaintiff does allege that Carolina Pad enticed J&B into continuing its performance of the J&B/Libretto Agreement, induced J&B to introduce its sales representatives and customers to Carolina Pad, and improperly used confidential information communicated by J&B during initial negotiations in January 2009.  However, J&B does not tie these factual allegations to its claim for unjust enrichment against Carolina Pad. J&B is, therefore, directed to replead more clearly its unjust enrichment claim.


H. Fraud Claims (Count IV)

  Plaintiff alleges that Cushing, Nix, and Carolina Pad fraudulently induced Plaintiff to continue performance under the J&B/Libretto Agreement by misrepresenting, through both words and actions, that Carolina Pad intended to assume Libretto's rights and obligations under the Libretto/J&B agreement.  To state a claim for fraud, a plaintiff "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  Plaintiff's

Complaint alleges that "before and after Carolina Pad acquired Libretto, Cushing assured Black that the acquisition would not affect J&B's rights under the Agreement, including its sales and distribution arrangements with Libretto," and that "Cushing, both before and after the acquisition of the business of Libretto by Carolina Pad, assured J&B that there would be no attempt to change or terminate the exclusive right of J&B to market and to distribute the Libretto Products pursuant tot he Agreement." (Compl. ¶¶ 39, 77(a).) These allegations fail to identify specific false statements or the dates on which they were made, fail to attribute false statements to any defendant but Cushing, and are too vague to establish a claim for fraud. See Campers' World Intern., Inc. v. Perry Ellis Int'l, Inc., No. 02 Civ. 453, 2002 WL 1870243, at *3 (S.D.N.Y. Aug. 13, 2002). However, because Defendants failed to raise this argument in their prior motion to dismiss the original Complaint, Plaintiffs are granted leave to replead their fraud claims with sufficient specificity.

I.       Conspiracy Claims (Count V)

          Under New York law, civil conspiracy is not a separate tort, but rather may be used to connect the acts of separate defendants to an underlying actionable tort. Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009). Here, Plaintiff asserts conspiracy claims against all four defendants - Carolina Pad, Nix, Libretto and Cushing - premised on the fraud claim described above. However, despite stating that the conspiracy cause of action is based on the fraud cause of action, Plaintiff does not assert a fraud cause of action against Libretto. Therefore, Plaintiff's conspiracy claim against Libretto automatically fails. Similarly, since Plaintiff has not adequately alleged a fraud claim against Carolina Pad, Nix,or Cushing,  its conspiracy claims against these three defendants necessarily

fail.  To the extent that Plaintiff amends its fraud claims against Carolina Pad, Nix and Cushing, it may also replead its conspiracy claims.

### III.   CONCLUSION

For the foregoing reasons, Carolina Pad's motion to dismiss Counts I, III, IV, V and VI of the Complaint is granted.  Libretto's motion to dismiss Counts III, IV and V is granted.  Libretto's motion to dismiss Count II (Plaintiff's breach of contract claim against Libretto) is granted, except as to Plaintiff's allegations of Libretto's January 2008 breach of the J&B/Libretto Agreement.  As discussed above, Plaintiff is granted leave to replead Counts II, III, IV, V and VI as to the relevant Defendants.  Any second amended complaint must be filed by February 24, 2012.  Failure to timely file a further amended complaint will result in dismissal of Counts II, III, IV, V, and VI with prejudice and without further advance notice.  Count I is hereby dismissed with prejudice.  This Memorandum Opinion and Order resolves docket entry nos. 46 and 49.

The pre-trial conference in this case is scheduled for April 27, 2012, at 10:30 a.m.


Dated: New York, New York
      February 9, 2012

                                                 _____
                                           LAURA TAYLOR SWAIN
                                           United States District Judge